E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JEREMY K. BEECHER (Cal. Bar No. 301272)
Assistant United States Attorney
International Narcotics, Money
  Laundering & Racketeering Section
KELLY LAROCQUE (Cal. Bar. No. 337912)
Assistant United States Attorney
General Crimes Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-5429/3308
     Facsimile: (213) 894-0141
     E-mail:   jeremy.beecher@usdoj.gov
               kelly.larocque@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:23-cr-00588-PA |
| Plaintiff, | UNITED STATES' SENTENCING POSITION |
| v. | Hearing Date: September 23, 2024<br>Hearing Time: 8:30 a.m. |
| ALAN DAVOOD, | Location:    Courtroom of the<br>              Hon. Percy Anderson |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Jeremy K. Beecher and Kelly Larocque, hereby files its Sentencing Position.

//

//

//

This Sentencing Position is based upon the attached memorandum of points and authorities and supporting exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: September 9, 2024              Respectfully submitted,

                                          E. MARTIN ESTRADA
                                        United States Attorney

                                        MACK E. JENKINS
                                        Assistant United States Attorney
                                        Chief, Criminal Division

                                             /s/
                                        JEREMY K. BEECHER
                                        Assistant United States Attorney

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant Alan Davood conspired to export more than 150 kilograms of methamphetamine from the United States to Australia through the Ports of Los Angeles and Long Beach.  Defendant's scheme involved concealing large quantities of methamphetamine inside the cavities of seemingly innocuous industrial objects -- specifically, designer concrete coffee tables, commercial floor scrubbers, and massage chairs.  Defendant then arranged for these items' export by misrepresenting that legitimate companies were the shipping and receiving parties.  Defendant used other sophisticated means -- including the use of burner phones, aliases, cash payments, and communicating via encrypted messaging applications -- to conceal his and other co-conspirators' identities and unlawful activities. Following law enforcement's search of defendant's Houston, Texas, apartment, he was arrested at the Houston International Airport as he prepared to board a one-way flight out of the country.

For this conduct, consistent with the plea agreement, the United States respectfully recommends that the Court impose the following sentence:  a low-end Guidelines term of 135 months' imprisonment; a five-year term of supervised release; and the mandatory $100 special assessment.

**II.   PROBATION'S RECOMMENDATION**

On April 19, 2024, defendant pled guilty to one count of conspiracy to export methamphetamine in violation of 21 U.S.C. §§ 963, 960(b)(1)(H), 960(a)(1), and 953(c) (Count 1), pursuant to a plea agreement filed on April 3, 2024.  (Dkt. 36 ("Plea Agreement").)

The United States Probation & Pretrial Services Office ("USPO") issued a Presentence Investigation Report ("PSR") on June 5, 2024. (Dkt. 40.) USPO calculated an offense level of 33 and a Criminal History Category of I. (PSR at 4, ¶¶ 50, 57.) USPO therefore found that the Guidelines range for defendant's term of imprisonment is 135 to 168 months, with a statutory minimum term of imprisonment of ten years. (PSR ¶¶ 97-98.) USPO further determined that defendant's Guidelines term of supervised release is five years, with a mandatory minimum supervised release term of five years and a maximum term of life. (PSR ¶¶ 100-101.)

The United States has no objections to the PSR's findings or Guidelines calculation.[1]

### III. STATEMENT OF FACTS

Beginning no later than December 10, 2022, and continuing through June 21, 2023, defendant conspired with others to export methamphetamine from the United States to Australia.

Specifically, defendant, together with other co-conspirators, purchased machinery and furniture -- including commercial floor scrubbers, coffee tables and massage chairs -- which had large cavities that could be used to conceal large quantities of controlled substances. Defendant and his co-conspirators purchased those items using measures designed to prevent their identities from becoming known, including by paying with cash, giving false identities, and using temporary, anonymized cell phone numbers as contact

---

[1] The United States notes that the defendant is not Safety Valve eligible as he did not "truthfully provide[] to the Government all information and evidence [he] has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . ." 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(a)(5).

information.  Defendant and his co-conspirators then concealed methamphetamine inside the cavities of the purchased machinery or furniture, and crated and otherwise prepared the products for exportation.  Defendant and his co-conspirators then rented storage units to store the methamphetamine shipments and hired freight forwarders to export the methamphetamine shipments from the United States to Australia via cargo ship.  Defendant and his co-conspirators falsely represented to the freight forwarders that the methamphetamine shipments consisted only of the purchased products and did not reveal that they contained large amounts of methamphetamine concealed inside.  To avoid detection and further conceal their shipments, defendant and his co-conspirators posed as owners of legitimate companies in the United States and Australia and falsely represented that those purported companies were shipping and receiving the methamphetamine shipments.

In furtherance of this conspiracy, on December 15, 2022, defendant traveled to Los Angeles and purchased with cash four commercial floor scrubbers, using the alias Sam Yokhana.  Defendant or a co-conspirator then packaged and concealed approximately 49.4 kilograms of a mixture or substance containing a detectable amount of methamphetamine inside the floor scrubbers.  On January 26, 2023, defendant hired a trucking company to deliver the floor scrubbers to a freight forwarding warehouse in Hawthorne, California, for export to Australia via cargo ship from the Port of Los Angeles or Long Beach.  That day, he was present at a storage unit he had rented in La Puente, where he helped personnel from the trucking company he had hired access the floor scrubbers.

On February 6, 2023, defendant, under the alias Sam Martins, purchased two concrete coffee tables in Los Angeles. On April 3, 2023, defendant, under the similar name Sam Martinez, caused the coffee tables to be delivered to a freight forwarding warehouse in Carson, California, for export to Australia via cargo ship from the Port of Los Angeles or Long Beach. Defendant knew at the time the coffee tables were delivered to the freight forwarding warehouse that he or a co-conspirator had concealed approximately 51 kilograms of a mixture or substance containing a detectable amount of methamphetamine inside the coffee tables.

On May 17, 2023, defendant caused four massage chairs to be delivered to a crating company in Irvine, California, to prepare them for export to Australia via cargo ship from the Port of Los Angeles or Long Beach. The previous day, he had corresponded with a co-conspirator on the encrypted messaging application Threema, instructing her to wrap the boxes containing the massage chairs in a manner that would not arouse attention. At the time the massage chairs were delivered to the crating company, defendant knew that he or a co-conspirator had concealed approximately 50.3 kilograms of methamphetamine inside them.

Following export of items filled with methamphetamine, defendant's co-conspirators in Australia would receive those items and further distribute in Australia the methamphetamine hidden inside them.

On July 20, 2023, law enforcement executed a search warrant of defendant's apartment in Houston, Texas, and found numerous burner phones that defendant used in connection with the foregoing scheme, as well as 32 rounds of .40 caliber ammunition.

Law enforcement arrested defendant at the Houston International Airport in November 2023, as he boarded a one-way flight out of the United States.

(Plea Agreement ¶ 14; PSR ¶¶ 9-28.)

## IV. THE UNITED STATES' RECOMMENDATION

For the reasons set forth below, the United States respectfully recommends that the Court impose the following sentence: a low-end Guidelines term of 135 months' imprisonment; a five-year term of supervised release; and the mandatory $100 special assessment.

### A. A 135-Month Sentence Is No Greater Than Necessary

The sentence recommended by the United States is reasonable within the meaning of Title 18, United States Code, Section 3553(a). United States v. Booker requires the Court to consider the factors identified in Section 3553(a) when imposing sentence. 543 U.S. 220 (2005). Among the factors to be considered are the nature and circumstances of the offense; the history and characteristics of the defendant; and the need to deter future criminal conduct, promote respect for the law, and provide just punishment. 18 U.S.C. § 3553(a).

The United States' recommended sentence is appropriate, given the nature and circumstances of the offense, the seriousness of the offense, and the history and characteristics of defendant. Defendant committed a serious offense: He conspired with others known and unknown to the United States to export, and in fact exported, at least 150 kilograms of methamphetamine from the United States to Australia. As set forth above, defendant and his co-conspirators utilized sophisticated means to carry out their scheme and conceal their identities from law enforcement.

There is no reason defendant should have become involved in such a significant methamphetamine exportation scheme.  The PSR reveals that defendant has had numerous forms of legitimate employment in his life and most recently worked as a construction and real estate investment professional in Houston.  (PSR ¶ 82.)  Rather than earn a legitimate income, however, defendant's choices led him to this course of conduct, where he presumably could make more money more easily than he could through legitimate employment.  Defendant's conduct is particularly egregious in that he was only able to engage in this scheme due to being present in the United States on an investor's visa.  Defendant breached the country's trust by engaging in this large-scale methamphetamine exportation scheme rather than conducting the sort of legitimate business activities for which he was granted residency.

In mitigation, however, when defendant was arrested and confronted with the charges in this case, he accepted responsibility for his actions.  In addition, defendant has no known criminal history.  Balancing the aggravating and mitigating factors in this case supports a low-end Guidelines sentence of 135 months' imprisonment.

The United States' recommended sentence also serves the remaining factors enumerated in 18 U.S.C. § 3553(a).  It will promote respect for the law and provide just punishment for defendant's criminal conduct by deterring others who would choose to make money by feeding the drug economy both in the United States and abroad.  A 135-month sentence will also deter defendant personally from pursuing further criminal conduct of this sort.  Finally, the United States' recommended sentence will protect the public, in the

United States and Australia, from further crimes of defendant.  A sentence of 135 months of imprisonment is therefore sufficient, but not greater than necessary, to satisfy the needs set forth in 18 U.S.C. § 3553(a).

### B. Supervised Release, Fine, and Restitution

The United States respectfully recommends a five-year term of supervised release.  As noted in the PSR, defendant is a Canadian national who was in the United States on a visa and is likely to be deported to Canada following his release from custody.  (PSR ¶ 94.) The statutory minimum term of five years' supervised release is therefore appropriate, as defendant is unlikely to be present in the United States for supervision following his prison sentence.

The United States concurs with USPO that in light of defendant's likely deportation following his prison sentence, it will likely be impractical to collect any fine from him, and any financial resources defendant secures therefore will be better used to reestablish himself in Canada.  (Id.)

The United States is unaware of any claim for restitution in this matter.

### V. CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court impose the following sentence:  a low-end Guidelines term of 135 months' imprisonment; a five-year term of supervised release; and the mandatory $100 special assessment.